Wright, J.
The Springfield and Clifton Turnpike Co., plaintiff in error, as plaintiff below, filed in the Court of Common Pleas, Clark county, the following petition:
The plaintiff says, that it is a duly incorporated company under the laws of Ohio, and under an act bearing date, and which took effect May 1st, a. d. 1852.
That upon the 26th day of October, a. d. 1859, it entered into a contract with the said defendant in the words and figures, following, viz:
“ Articles of agreement made and entered into this 26th day of October, a. d. 1859, between the City of Springfield, through John L. Pettigrew, James Rodgers, John S. Harrison, and Wm. McIntyre — appointed by a resolution of the city council of said city for this purpose — of the first part, and the Springfield and Clifton Turnpike Company, through John Luse, president of said company — being authorized for this purpose — of the second part, witpesseth:
“ That the said party of the first part, in consideration •of the covenants hereinafter entered into by the party of the second part, agrees that the said jiarty of the second part shall have the privilege of taking toll from the north line of Wm. Wright’s premises, at the intersection of the •Selma turnpike with Limestone street to the corporation line, said road running over Limestone street. ' .
“ And the said party of the second part, in consideration thereof, doth on its part hereby covenant and agree that it will build a good turnpike road, such as is required by law, from the south line of Wm. Houck’s lot, over Limestone street to the corporation line; said portion of said road to *586 be thirty'feet wide and one foot high in the center, and the gravel on the same to be eighteen feet wide and fifteen inches deep in the center, and nine inches deep at each side or edge, one-half of said gravel to be put on immediately, and the remaining portion within a year from the date of the execution of this agreement. And the said party of the second part further agrees that that portion of said road to be built by them is to be surveyed and the grade given to the same by the engineer of the City of Springfield, and also that the putting down of said gravel shall be under the direction and control of the said city.
“ And the said party of the second part further agrees that they will keep all of said road, from the corporation line to the north corner of Wm. Wright’s premises, in good and lawful repair, and that the city council shall be the judge of what repairs shall be done on said road, and also that, for police purposes, the said road within the city to the corporation line shall be under the control of the city as fully as before the execution of this agreement, and that the ordinances of said city are to extend over said road.
“ It is also agreed between the respective parties hereto that if the said party of the second part should be prevented, from any cause, from taking toll on any part of said road wfithin the city, then the said city, at the request of the said Turnpike Company, will pay the original cost of the construction of that part of said road constructed by said company, and take the whole of said road within the city off of their hands, and for this purpose the said Turnpike Company agrees to keep an accurate account of the expenses of the construction of said road.
“ It is also agreed on the part of the said city that they will secure to said company the right of way of said road from said north corner of Wm. Wright’s premises to the corporation line on the street- known as Limestone-street.
“ In testimony whereof, the respective parties hereto have *587 hereunto set their hands and seals, on the day and year above written.
“ (Signed) The City of Springfield, per
“ J. S. Harrison,
“ J. L. Pettigrew,
“ James Rodgers,
“ Wm. McIntyre.
“ (Signed)
“ The Springfield and Clifton Turnpike Co., per
“ John Luse, President.”
That the said plaintiff duly performed all the conditions-of said contract on its part, and to the satisfaction and acceptance of said City of Springfield and its duly authorized' agents.
That the original cost of the construction of said road,, on said street, was four hundred and ninety-three and seventy-five-hundredths ($493.75) dollars.
The said plaintiff has been prevented by the laws of the State of Ohio from collecting or taking toll on that part of said road so constructed by it over said Limestone street, within said city, and in consequence thereof, and in consequence of objections made by persons traveling over the same, said plaintiff’ can not, nor does not, avail itself of the pretended privilege granted in said contract by said defendant to said plaintiff’ to take toll on said Limestone street, within said city, over said road in said city, from the north line of Wm. Wright’s premises, at the intersection of the Selma turnpike with Limestone street, in said city,, to the corporation line.
The said defendant has been for a long period of time and still is in full and complete possession of the whole of said road or street within said city, and has taken, and exercised, and still exercises, full and complete control over the same.
That, on or about the 11th day of February, a. d. 1870,. the said plaintiff demanded and requested of said defendant the payment of the original cost of the construction of that part of said road so constructed by said company, lying *588 in said city, which, said defendant has neglected and refused to pay.
That there is still due and unpaid from said defendant to ■said plaintiff the sum of $493.75, with interest.
The plaintiff, therefore, prays judgment against defendant for the said sum of $493.75, with interest.
-A demurrer to this petition was sustained by the Court ■of Common Pleas, and the following entry made thereupon:
“July 7,1870.
“ This cause came on for hearing on demurrer of defendant to the petition of plaintiff, and was argued by counsel; upon consideration whereof, the court'do find that the contract set forth in said petition is illegal and void, and, on •consideration, etc., can not be inforeed, and, as a conse•quence, that said demurrer is well taken.
“ It is, therefore, ordered and adjudged by the court that isaid demurrer be sustained, and that said petition be dismissed at said plaintiff’s costs ; to which findings, rulings, .and judgment of the court, the said plaintiffj by its counsel excepts.”
The cause having been taken, on error, to the District ■Court, the action of the Court of Common Pleas was affirmed as follows:
“ September 13, 1871.
“ This cause came on to be heard upon the petition.in •error of the said plaintiffj and was argued by counsel and submitted to the court; upon consideration whereof, the court do find that there is no error in the judgment of the •court below in sustaining the demurrer to the said plaintiff’s petition therein, for the reason that, in the opinion, of the court, the plaintiff is hot prevented, by the laws of ■Ohio, from collecting tolls for that portion of road built by it within the limits of the city of Springfield, over the line •of Limestone street, as provided in the contract set forth in said plaintiff’s petition in the court below.
“ It is, therefore, ordered by the court, that said1 judgment of the Court of Common Pleas be, and the same is, hereby affirmed at the costs of the said plaintiff; to which *589 finding, orders, and judgment of affirmation of the court,, the plaintiff, by its counsel, excepts.”
A petition in error was filed in the Supreme Court.
The record shows, that in October, 1859, the Springfield and Clifton Turnpike Company, plaintiff in error, contracted with the'city of Springfield, defendant in error, to-the following effect:
The turnpike company was to have the privilege of taking toll through the town of Springfield, or a portion of the same. In consideration thereof, the turnpike company agreed to build a good turnpike road over one of the-streets, under the direction and control of the city, and keep it in repair. If the turnpike company was prevented,, by any cause, from taking tolls in the city, then the city was to pay the company what had been expended in constructing that part of the road within the municipal limits. The amount so expended in construction was $493.75, for-which a recovery is sought, on the ground that the turnpike company has been prevented, by the laws of Ohio,, from taking toll within the city, by reason whereof, and because persons object, the turnpike can not avail itself of’ the right to collect toll in the city, which was the object and purpose of the contract.
The Court of Common Pleas sustained the demurrer, and. dismissed the petition, because the contract was illegal, and the District Court affirmed the judgment, holding that the-turnpike company was not prevented, by law, from collecting tolls for that portion of the road built by it within the-city of Springfield.
Prom the records and briefs we gather the claims of the respective parties. The turnpike company says, that under the 34th section, turnpike laws, they are prohibited from collecting toll for that portion of their road in the city of' Sjeringfield.
The pertinent language of section 34 is : “ That no company, etc., which has been or may hereafter be incorporated for the purpose of making any turnpike or plank-road, shall be authorized to erect or keep up any toll-gate,,. *590 ■or receive tolls, within the corporate limits of any incorporated city, town, or village, or within eighty rods of such limits.”
Construing this statute to mean that they are not entitled to receive toll, under any circumstances or at any place, for the portion of their road in Springfield, the company say, the contract providing for their so doing is necessarily illegal and void, and they ought to have their construction ■money refunded them.
Upon the other hand, the city says, that this statute was merely to designate the places where toll-gates shall be kept and toll received. That, while it prohibits a gate ■within the city or within eighty rods of its limits, it does ■not deny the right to locate the gate outside the prescribed 'boundaries, and take toll, over both the eighty rods to the municipal line, and over such portion of the turnpike as is within the municipality itself. This is the proper construction of the law.
The legislature has seen fit to prescribe the places where toll-gates shall be located. Section 35,1 S. & C. 295, says, that they may be erected at “ suitable distances,” as the county' commissioners may license. It has also provided, that they shall not be erected in towns, or within eighty rods of towns. But this prohibition does not prevent the charging -of toll to and into the town, provided the company had power and did build its road to and into the town. They are authorized to collect toll over the whole extent of their road, wherever it lawfully runs, provided they collect it at the gates. These are the only authorized places .of collection.
The reason for the exclusion of gates from municipal limits is readily apparent. It would be an intolerable nuisance to the citizen, desiring to drive a block or two, to be compelled to stop at a gate and pay toll. The thousand avocations of municipal life would find the turnpike bar an intolerable obstacle.
"While therefore the gate is excluded, from paramount ■•considerations there is no such reason for depriving the *591 company of its right to toll. No citizen is inconvenienced ■by this.
Now when this contract provided that the company might take toll for that portion of the road within the ■city, it meant that such toll should be taken in the ordinary way, and according to law — that is, at the gates. And because the gate is eighty rods outside, the company is not deprived of any right under the contract. It is true they can not make citizens pay toll who do not go outside of the city limits. Neither can they make people pay who travel between the gates, for the simple reason that toll can be collected only at the gates. Although a turnpike may, in a certain sense, be entitled to receive toll for the whole length of its road, it does not follow that it can always get it. It may be paradoxical to say that though entitled to toll over the whole, it is not so entitled to toll over every part of its road, but such is the fact, as is illustrated in the presence of gate-keepers every day, when the traveler drives up to the gate, turns about and drives back. The company’s right is to make those only pay who go through its gates. When they do go through they may be charged for so much of the road as they have traveled upon, even though they may have traveled within municipal limits.
The City of Springfield therefore has placed the proper construction upon sec. 34.
We do not mean herein to decide that municipal authorities can give to turnpikes the right to collect toll within their limits, and thus farm out, for the purposes of revenue, streets and alleys. That question does not arise. But if the right to collect toll within municipal limits be conceded to the turnpike company, we hold that a gate placed at the proper distance may charge for the eighty rods and to the entire extent of the road within the city, that right not being taken away by sec. 34.

Judgment of District Court affirmed,.

Scott, Chief Judge, Day, Johnson, and Asm urn, JJ., ■concurred.